SMITH v. PRICHARD et al.—122 S. W. (2d) 829.

Middle Section. July 9, 1938.

Petition for Certiorari denied by Supreme Court, December 17, 1938.

Rutherford & Rutherford, of Nashville, for appellant.
H. B. McGinness, of Carthage, for appellees.

FAW, P. J. The final decree of the chancery court in this cause dismissed the complainant's bill at her cost and granted an appeal, prayed by complainant, to this court, "upon execution of appeal bond as required by law, or upon her taking and filing a pauper's oath," and complainant was allowed thirty days in which to perfect her appeal.

When the case was heard on the regular call of our docket, and the record was passed to the court, it was seen that the transcript contained a pauper's oath of the complainant for an appeal, but that the record did not show when, if at all, said oath was filed in the chancery court. The appeal was thereupon dismissed and the cause stricken from the docket of this court, because of the absence of an affirmative showing in the record that the appeal had been perfected by filing bond or oath within the period of thirty days granted by the chancery court for that purpose.

However, it was stated in the memo opinion of this court, filed at the time the appeal was dismissed and the cause "stricken" as aforesaid, that "if, as a matter of fact, said pauper oath of complainant was seasonably and properly filed below, and the failure of the transcript to so show was due to an oversight of the clerk and master in making up the transcript, the appellant has her remedy by a petition for a rehearing within ten days, accompanied by

a duly certified transcript of the pauper oath with proper endorsements of the clerk and master thereon.''

Within ten days after the aforesaid order of dismissal, the appellant, Bettie Prichard Smith, filed a petition for a rehearing, accompanied by a duly certified copy of the pauper's oath filed by appellant, from which it appears, by endorsement thereon, that it was marked filed by the clerk and master in due season. Appellant also filed with her petition a written statement by the clerk and master of the chancery court of Smith County that the omission from the original transcript of the aforesaid endorsement on said pauper's oath was due to an oversight and inadvertence in making up the transcript.

The appellees filed an answer to the aforesaid petition of appellant, in which answer attention is called to the fact that the final decree of the chancery court in this cause bears date of April 21, 1937, and the appellant's pauper's oath for the appeal was executed by her on April 20, 1937, one day before the date of the final decree; and appellees ''submit that a pauper's oath, in lieu of appeal bond executed before a decree made in the court below is ineffectual to transfer the cause to the court of appeals.''

It should be stated that the aforesaid pauper's oath of appellant was filed below on April 23, 1937, two days after the decree bears date; and the objection of the appellees to the oath is not directed to the date of the filing thereof, but to the fact that the appellant made the oath on a date anterior to the decree.

Presumaby the reason underlying the objection of appellees is, that an oath by appellant that, owing to her poverty, she is unable to bear the expense of an appeal, etc., made on a day anterior to the decree, is not proof of such poverty at the date of the decree, or on the day when the oath was filed subsequent to the decree.

It may be true, as a general rule, that (as appellees contend) ''a pauper's oath, in lieu of appeal bond, executed before a decree is made in the court below is ineffectual to transfer the cause to the court of appeals;'' but, with respect to this question, it seems that our Supreme Court has recognized a distinction between the time when a decree is ''made'' and the time when it is entered on the minutes of the court. In the case of The State, for Use etc., v. Gannaway, 16 Lea 124, a decree was pronounced by the chancellor on June 2, 1885, against one Bloomstein, and Bloomstein prayed an appeal to the Supreme Court, which was granted by the chancellor ''upon his giving bond, or taking the oath prescribed for poor persons, according to law.'' On the next day, June 3rd, Bloomstein tendered to the deputy clerk and master the oath in due form to perfect his appeal, but the deputy clerk and master refused to receive and file the oath for the reason that the order granting the appeal had not been transcribed upon the minutes of the court.

No further action was taken with reference to said pauper's oath of Bloomstein until after the lapse of thirty days (but during the same term) and the complainants had procured an execution against Bloomstein to be issued and placed in the hands of the sheriff, when Bloomstein presented a petition to the chancellor, alleging that he had perfected his appeal by tendering the pauper's oath on June 3, 1885, as aforesaid, and praying that the execution be recalled. The chancellor granted Bloomstein's petition, holding that it was the duty of the clerk to have received said oath when it was tendered on *June 3rd*—that the appeal was perfected at that time —and he ordered the execution recalled and the transcript of the record sent up to the Supreme Court.

In the Supreme Court, the appellees moved to dismiss the appeal "because the pauper's oath for said appeal was not filed in the court within the time allowed by law." In disposing of this motion, the Supreme Court said: "we have no difficulty in holding that the taking the prescribed oath and tendering it to the clerk, and his refusal to receive it, was a substantial compliance with the requirements of the law on part of Bloomstein, and his appeal was then perfected. The order allowing the appeal was in force when announced by the chancellor, reduced to writing in form, and approved by him, although it had not been entered upon the minutes of the court. The respondent was entited then to take said oath and have it filed as a mode of perfecting his appeal. The refusal of the clerk to file it was simply a mistake of his duty, and the order of the chancellor, when the matter was brought to his attention, directing said oath to be filed, was proper. The appeal having been perfected, in legal contemplation, within thirty days from the rendition of the decree, the execution was improvidently issued and was properly recalled by the chancellor." See also Green v. Craig, 164 Tenn. 445, 449, 51 S. W. (2d) 480.

In the instant case, the learned chancellor filed an "Opinion and Finding of Facts," bearing date of *April 13, 1937*, which was, by his direction, made a part of the record and is incorporated in the transcript sent up to this court, and the concluding paragraphs thereof are as follows:

"The Court is, therefore, of the opinion that the proof is not sufficient to sustain the bill, and that it should be dismissed at the cost of complainant.

"At a former term of the court the demurrer of the defendants Ed Prichard and J. F. Prichard to certain parts of the original bill was by the Court sustained, that is, the Court has heretofore held that the instrument in quesion is in form a deed, and exception was taken to the action of the Court at the time, by the complainant and an appeal prayed and denied at the time by the Court, and the Court now grants an appeal to the complainant in this case, and

thirty days are allowed from the date of the entry of the decree herein in which to perfect said appeal. Decree will be drafted by counsel for defendants in accordance with this opinion and finding of facts, and entered on the chambers minutes of the Court. This opinion and finding will be filed with the Clerk & Master and made a part of the record in this case, and imediately upon the receipt hereof the Clerk & Master will notify counsel for the respective parties of the receipt of same. Counsel are this day being mailed copy of this opinion and finding of facts.

"Done at Livingston, Tennessee, this April 13th, 1937.

"A. F. Officer, Chancellor."

In view of the grant of the appeal by the chancellor, appended to his written Opinion and Findings of April 13, 1937, above quoted, we think the pauper's oath executed by the complainant-appellant thereafter on April 20th and filed on April 23rd perfected her appeal, and was effectual to transfer jurisdiction of the cause to this court.

The appellant's petition for a rehearing is granted and the certified copy of the pauper's oath which accompanies the petition will be filed and treated as a part of the transcript of the record in this court.

It is deemed proper to state further, in this connection, that, in her petition for a rehearing, the petitioner, Bettie Prichard Smith, asks, in substance, that, if this court should be of the opinion that her pauper's oath filed on April 23, 1937, as aforesaid, was not sufficient to perfect her appeal (which she does not concede), that she be permitted to file the record for writ of error, and, to that end, she tenders an oath in forma pauperis for a writ of error.

If the petitioner had failed to perfect her appeal, she would have been entitled to the writ of error as a matter of course (her application therefor having been made within one year after the decree below) ; but, as we have held that her appeal was perfected, she is not entitled to (and does not need) the writ of error. This conclusion is a necessary corollary of the rule announced in the authorities cited in Central National Bank v. Willis, 8 Tenn. App. 204, 206.

Another preliminary question is presented by a motion on behalf of appellees "to strike all appellant's assignments of error for nonconformity" to subsection 2 of the 11th Rule of this court.

The motion thus made by appellees is based upon the assertion therein that "neither of the assignments of error made for appellant in this Court conforms to Rule 11, sub-section (2) of this Court, in that, (a) neither of said assignments of error purports to show *wherein* the action complained of is erroneous, nor (b) *how* it prejudiced the rights of appellant, nor (c) are there any references to the *pages of the record* where the ruling of the Court on the mat-

ters complained of appear." And appellees further assert that "this failure to conform to the Rule in this respect is not aided by the brief accompanying the assignments of error."

The appellant's assignments of error are as follows.

1. "It was error in the Chancellor's holding in substance that the paper writing executed by J. C. Prichard and wife on November 24th, 1913 was a deed and operative as a deed."

2. "It was error to sustain defendant's objection to the questions and answers of complainant's witnesses as to conversations with the deceased Mrs. Melissa Prichard in regard to her complaints and dissatisfaction with the disposition of her farm in the way it had been done."

3. "The Chancellor's decree sustaining the defendant's demurrer to complainant's bill was also error, as complainant contends that said paper writing shows on its face that it was not sufficient as a deed to convey said land."

4. "The entire decree of the Chancellor is also assigned as error."

5. "The Chancellor erred in holding that there was ever any delivery of the notes."

It is so obvious that the second assignment, supra, does not conform to subsection 3 of the 11th Rule of this Court (which is the same as subsection 3 of the 14th Rule of the Supreme Court); that we must declare appellant's second assignment of error insufficient to require a review of the ruling of the chancellor therein mentioned. The last mentioned Rule provides that, "When the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found." See Appendix to 17 Tennessee Appeals Reports, page III; Appendix to 155 Tennessee, page XII; William's Annotated Code, vol. 7, page 546.

Appellant's fourth and fifth assignments, supra, are manifestly too general and indefinite to constitute valid assignments of error. Numerous cases supporting his conclusion are collated in Crawford's Tennessee Digest, Vol. 1, pp. 234-240.

Moreover, we think we are justified in treating appellant's second, fourth and fifth assignments of error, supra, as *abandoned* by appellant. In appellant's reply to appellees' motion to strike appellant's assignments of error, it is said:

"We observe that our adversary in answering our petition to rehear submits about a half a page of criticism upon our assignments of error heretofore filed.

"Now here is a case with practically all questions disposed of by the Chancellor upon a demurrer, and there was practically no need for but one assignment of error which was to the action of the

Chancellor in sustaining the demurrer, and we submit that the assignment heretofore filed is in conformity to the rules of this Court upon such matters, and there are ample references in the assignments and in the brief referring to the parts of the record where the ruling complained of was made.''

Although the appellant's first and third assignments of error are quite meager, we will treat these assignments, aided by the appellant's ''statement of the case'' and supporting brief, as making the question that the chancellor erred in sustaining the demurrer of the defendants-appellees to the parts of complainant's bill specified in the demurrer.

The bill in this case was filed in the chancery court of Smith County, on August 7, 1936, by Bettie Prichard Smith, a citizen of Davidson County, Tennessee, against Ed Prichard, John Prichard, J. F. Prichard, Mrs. Tom Smith and Mrs. Mike Lancaster, citizens of Smith County, Tennessee.

The allegations of the bill, so far as necessaryy to be stated for the purposes of the demurrer, are as follows:

''Your complainants would most respectfully show:

''That on November 24, 1913, Mr. J. C. Prichard and wife, Melissa Prichard, an old couple living in the 9th Civil District of Smith County, Tennessee, undertook to make some kind of conveyance to their two sons, James and Ed Prichard, of a fine tract of land, well improved, worth about Twenty Thousant Dollars, for the sum of Ten Thousand Dollars, to be paid at their respective deaths, in three equal payments, retaining a lien on said farm until the said amounts were paid in full.

''They obtained the service of some illiterate, non-lawyer to write the instrument of conveyance, which they both signed and duly acknowledged before one Robert Heflin, a Notary Public, and said instrument was registered December 6th, 1913, at 12 o'clock a. m., in Deed Book No. 23, pages 333-334, of the Register's Office of Smith County, Tenn. Complt avers there was no delivery of said paper.

''The instrument above referred to is herein set out in Hec verba, as follows, to-wit:

'' 'For the consideration of Ten Thousand Dollars, to be paid as follows: Two thousand Dollars to be paid to the following heirs each, or their representatives, William Pritchet, John Pritchet, and Bettie Smith, by James Prichet, and Eda Prichett, to be paid after our deth of James c and Mallisie Prichett, on two and three years equally divid in the three payments, with int. from the deth of us and a lien retained on said farm until the above amount with interest is paid, in full, and the remainder Four Thousand Dollars retained as equal between James F. and Ed Pritchett the above named is our children, our legal heirs. We James C. and wife

Malissie Prichett have this day sold, do hereby convey to James F. and Ed Pritchett our boys the following described tract of land, in civil district 9, Smith County, Tennessee, and bounded as follows: beginning on Wm. Kelley North W. corner thence S. 9′, 22 poles to a stake in the road, thence 6. 87′ E. 54⅖ poles with Kelley to a Hickory on ridge; thence with Kelley line S. 30 E. 7 poles to stake; thence N. 84′ E. 10 poles to double chestnut tree, the N. 70 E. 25 to sugar tree; thence S. 62′ E. 17⅘ poles to white walnut; thence S. 42′ E. 20⅖ poles to a stake in ———, thence S. 83′ E. 18⅘ poles to a stake; thence 48′ E. 28 to stake in Prichett and Lanker's line; N. with H. C. Lancaster line; thence to H. C. Lancaster's corner, just on top of ridge; thence N. W. with H. C. Lancaster ——— with his line to the public road to John Pritchett corner; thence N. W. with John Pritchett line to a maple on Smith ford Bank, thence to the center of Smith ford up to Mill site N. E. with Mill site E. to a stake; thence S. E. with said mill site to the center of the road, Will Prichett line, E. With public road; thence with graveyard fence, back to Wm. Pritchett line, about one acre is now fenced, is reserved as burying ground. Thence with Wm. Pritchett line, to Smith ford; thence up Smith ford to the beginning, containing about 160 acres, for the consideration of the above, we also convey the said land to James F. and Ed Pritchett that we are lawfully seized and possessed of said tract, and the same is unincumbered and we have a good right to convey the same. We have full possession of said above, conveyed during our life or either of us, and we will forever warrant and defend the title to the said tract against the lawful claims of all persons. If any heir or heirs of my estate undertake to set aside this conveyance or above ther forfeit all that setopart in this conveyance and is to be equally divided with ohr heirs that does not attempt to set aside the above conveyance. This Nov. 24, 1913.

" 'J. C. Prichard<br>" 'Melissa Prichard.

" 'State of Tennessee
." 'Smith County.

" 'Personally appeared before me Robt. Heflin, a Notary Public, in and for said County, and State, the within named J. C. Prichard the bargainor with whom I am personally acquainted, and who acknowledged that he executed the within ———, instrument, for the purposes therein contained. And Melissa Prichard, wife of the said J. C. Prichard, having personally appeared before me privately and apart from her husband, the said Malissa Prichard acknowledged the execution of said deed to have been done by her freely, voluntarily and understandingly, without compulsion or constraint from said husband, and for the purposes therein contained.

" 'Witness my hand and official seal, at Lancaster Tennessee, this 24 day of November, 1913.

" 'Robt. Heflin, Notary Public

" 'Registered Dec. 8th, 1913.

" '12 A. M. N. J. Kemp.

" 'Deed Book No. 23, p. 333-334.'

"The above mentioned illiterate draftsman of said instrument, was so ignorant, or the old couple, J. C. Prichard and Wife, Malissa Prichard, age over 80 years, were themselves so illiterate that they did not spell the names of their children like they spelled their own names, and did not spell the names of the two defendants, James and Ed alike, neither as to their given names nor their sirnames in any two places, as will be seen from a careful review of the foregoing exact copy of said conveyance.

"Your complainants would show that they are unable to say whether or not said above copied instrument was intended as a deed or a will. Complainants claim that it is neither a deed nor a will; that, while it partakes somewhat of the language usually conained in a deed, it also partakes somewhat of the language usually contained in a will.

"As a deed it sets out the consideration of $10,000.00 to be paid to the following heirs, or their representatives, William and John Pritchet and Betty Smith, by James and Eda Pritchett, to be paid after their 'deth' (death), with interest from the 'deth' (death) of us and a lien retained on said farm until the above amount with interest is paid in full.

"Said instrument further sets out that 'James F. and Ed Prichett, the above named is our children, our legal heirs, and that we James C. and Mwife Malissie Prichett have this day sold do hereby convey to James and Ed Prichett the following described tract of land in civil district 9, Smith County, Tennessee.' Then proceeds to give the boundary, containing about 160 acres.

"Said instrument further provides that 'we are lawfully seized and possessed of said tract and the same is unincumbered, and we have a good right to convey the same. We have full possession of said above conveyed (not mentioning land) during our life or either of us, and we will forever warrant and defend the title to the said tract against the lawful claims of all persons.'

" 'If any heir or heirs of my estate undertake to set aside this conveyance or above ther forfeit all that setopart in this conveyance and is to be equally divided with ehr heirs that does not attempt to set aside the above conveyance. This Nov. 24, 1913.'

"Now, your complainants would show that this deed, if it be a deed, is so informal and inconclusive as to when it shall take effect, and provides for a lien to apply after their respective deaths, and,

as to how said lien is to be enforced, and a disposition of the proceeds after the grantors are dead and gone.

"Complainant would show that the latter part of this instrument partakes somewhat of the nature of a will.

"Complainant would further show that this entire tract of land' was inherited by the said Mallissa Prichet, or Prichett, or Prichard, as the conveyance spells it all three ways, from her father, William Lancaster, who died in 1867. She inherited from her said father many hundreds of acres of land, including this 160 tract, the title to all of which was in her and undisputed by anybody, and the above named children, William Pritchet, John Pritchet, and Betty Smith, James Pritchet and ed 'Prichett' Pritchet, were her only children and heirs at law at the time of her death in 1921, (James C. Prichet having died within the past few months) and were her only children and heirs at law at the time of the execution of the above described, alleged, conveyance, on November 24, 1913.

"Your complainant freely confesses that she does not know whether the above described instrument is a deed or not. Their mother owned said land in fee simple, and had a right to convey it to whom she pleased. It seems that her husband, J. C. Prichet, or prichard, joined in said instrument merely for the sake of conformity. But the question is, did she exercise her right to convey said land by deed in a legal way.

"Complainant claims that, if Your Honor should construe the above instrument to be insufficient to operate as a valid conveyance of land, by deed, which must be definite as to the consideration and the time of payment, and freed from all contingencies that may happen after the conveyance was made, especially after the death of the conveyor. That is to say that, if this instrument amounts to a valid conveyance, by deed, and brought the matter of ownership of said land to a definite end, then she may be wrong in her construction of said paper. But, if said paper should not in Your Honor's opinion be a definite and conclusive transaction between living parties, then it must be a nullity, as it cannot operate as ay kind of will, disposing of real estate because there are no subscribing witnesses to it, which is necessary to the valid execution of a will devising real estate.

"Complainant would show that, if the Court should hold that said paper writing is neither a deed nor a will, then it is a nullity, and that Mrs. Malissa Prichett, the owner of said land at the time of her death, in 1921, died intestate as to said land, and that her children, the complainant and defendants above named, became the sole, legal owners by right of inheritance."

The demurrer of the defendants is as follows:

"These defendants demur to so much of the bill as charges that the instrument bearing date November 24, 1913, signed by J. C.

Prichard and Melissa Prichard and recorded at pages 333-34 of Deed Book No. 23, Register's office of Smith County, Tennessee, copied into the bill on pages 2 and 3 thereof, is not sufficient in form to pass title to the land therein described to the grantees named therein; and for cause of demurrer say:

"The said instrument, by its terms, vested the grantees named therein with a present interest and estate in certain designated and described land, only the right to the possession and enjoyment of such estate in said land being postponed."

 The fundamental rule which must govern the decision of this case is quoted by the learned counsel for appellant from 18 C. J., p. 149, section 6, as follows. "If the instrument passes a present interest, although the right to its possession and enjoyment may not occur until some future time, it is a deed or contract; but if the instrument does not pass an interest or right until the death of the maker, it is a will or testamentary paper. The question is to be determined by the intention of the parties derived from the whole instrument."

For the appellant, it is contended that a present interest in the described land was not conveyed by the instrument in question, and that it is, therefore, not operative as a deed; that the language of the instrument manifests an intention on the part of the makers thereof that it should not "take effect" or "operate" until the death of the makers, and that it is, therefore testamentary in character but, being without subscribing witnesses, it is not operative as a will.

For the appellees, it is insisted that the instrument in question, although crudely drawn, has all the essentials of a deed; that it is a simple present conveyance of the described land to James F. Prichard and Ed Prichard by their parents, J. C. Prichard and Melissa Prichard, with the reservation of life estates to the grantors, in consideration of the payment by the grantees of the sum of $2000 to each of the other three children of the grantors after the death of both grantors; and that it passed to James F. Prichard and Ed Prichard, in praesenti, a vested remainder estate in the described land, to be enjoyed in possession by the grantees after the deaths of the grantors.

Certain principles to be applied in the determination of the controversy thus presented are stated, with copious citations of authorities, in the opinion of this court, prepared by Judge Crownover, in the case of Couch v. Hoover, 18 Tenn. App. 523, 528-530, 79 S. W. (2d) 807, from which we quote as follows [page 810]:

" 'An instrument in the form of a deed reciting that in consideration of love and affection the author conveys to certain parties all his title, etc., to a tract of land, but providing that he is to hold in his own name, and have all the rents of the tract of land until

his death, then to be divided between the donees, is a deed conveying a present interest, and not a testamentary paper.' Jones v. Hicks, 2 Shan. Cas. 635.

" 'If the vested right to the present or future enjoyment of some specific thing then owned by the donor, passes to a designated person, the instrument operates in praesenti, and is a deed; and the postponement of the possession and beneficial enjoyment until the death of the donor, does not make it a will.' Sizer's Pritchard on Wills & Executors, sec. 18; Swails v. Bushart, 2 Head, 561; Wall's Adm'r v. Ward, 2 Swan, 648; Caines v. Marley, 2 Yerg. 582; Cains' Lessee v. Jones, 5 Yerg. 249, 250; Swiney v. Swiney, 14 Lea 316.

" 'A paper in the form of a deed, duly acknowledged and legally delivered, giving certain designated land to a certain person at the death of the giver, is an irrevocable deed, and not a testamentary paper. It conveys a present or vested remainder estate to be enjoyed after the death of the grantor. Johnson v. Mitchell, 1 Humph. (20 Tenn.) 168; Wall's Adm'r v. Ward, 2 Swan (32 Tenn.) 648; Fry v. Taylor, 1 Head (38 Tenn.) 594; Swails v. Bushart, 2 Head (39 Tenn.) 561; Swiney v. Swiney, 14 Lea (82 Tenn.) 316; Davis v. Garrett, 91 Tenn. (7 Pick.) 147, 18 S. W. 113; Cazassa v. Cazassa, 92 Tenn. (8 Pick.) 573, 22 S. W. 560, 20 L. R. A. 178, 36 Am. St. Rep. 112; Johnson v. Johnson, 103 Tenn. (19 Pick.) 32, 52 S. W. 814; Ellis v. Pearson, 104 Tenn. (20 Pick.) 591, 58 S. W. 318; Jones v. Hicks, 2 Shan. Cas. 635; Stamper v. Venable, 117 Tenn. (9 Cates) 557, 97 S. W. 812; Scott v. Union & Planters' Bank & Trust Co., 123 Tenn. (15 Cates) 258, 130 S. W. 757.' Williams' Tennessee Code, seventh note under section 8089. . . .

" 'The reservation of a life estate by the grantor was meaningless, unless he intended a present interest to vest in the grantees. He thereby necessarily recognized the grantees as the owners of the property, subject to the life estate.' . . .

" 'The original tendency was towards holding that papers indicating an intention to postpone enjoyment by the persons claiming to be grantees till after the death of the persons executing the papers should be classed as wills. This tendency in time yielded to another, namely, that it was the sounder policy in a case of doubt to declare that the instrument was a deed and thus make it effectual, when holding it to be testamentary would, for want of the requisite number of witnesses, render it nugatory. The true test, of course, is the intention of the maker, which is to be gathered from the terms of the paper. . . . Why should even the most ignorant man adopt the form of a deed if he intended to make a will? Almost any person, however illiterate or uninformed, would, if he desired to execute a real will, adopt for expressing his purpose language altogether unsuited for a present conveyance.' "

The rules announced in Couch v. Hoover, supra, and in the opin-

ions there cited, are not peculiar to this State, but are supported by the decided weight of authority in other American jurisdictions. See Annotation in 11 A. L. R., p. 23 et seq.

Unless the instrument here involved is a deed of conveyance, operating in praesenti, it is a nullity—a mere piece of waste paper. If, upon a consideration of the whole instrument, it should be doubtful whether it was intended as a present deed of conveyance or a testamentary paper it would be proper to adopt that construction which will give it operative effect, rather than to destroy its effect altogether. Frierson v. Blanton, 1 Baxt. 272, 276; New Memphis Gaslight Co. Cases, 105 Tenn. 268, 280, 60 S. W. 206, 80 Am. St. Rep. 880. The Annotator in 11 A. L. R. at page 46, says that the rule we have just stated is "generally accepted," and a number of cases are there cited in support of the rule that where "an instrument cannot operate as a will, because of insufficient execution, and it is sufficiently executed to operate as a deed, the courts will make an effort to construe it so as to prevent it from becoming a mere nullity."

However, in the view we take of the instrument here involved, we do not think it necessary to resort to the abovementioned rule applicable to "doubtful cases." We are of the opinion that the instrument in controversy contains all the "essentials" prescribed by our statute (Code, sec. 7607) for the conveyance of a present interest and vested estate in the land therein described. Although obviously drawn by an illiterate person, the recital of the consideration, the retention of a lien to secure deferred payments, the conveying clause, and the covenants of seizin, possession, against encumbrances and general warranty, are all in the form appropriate to a deed of conveyance in praesenti, rather than to a testamentary instrument. It was executed, acknowledged for registration and registered in the form and manner prescribed for deeds of conveyance. The form, contents, manner of execution, acknowledgment and registration, all evidence a purpose and intention on the part of J. C. Prichard and Melissa Prichard to execute a deed of conveyance, and thus dispose of the property therein described while they lived, rather than make a will to take effect after their death.

Counsel for appellant insist that the last sentence of the instrument in question discloses an intention on the part of the makers that the conveyance should not "take effect" until their deaths. This sentence is as follows: "If any heir or heirs of my estate undertake to set aside this conveyance or (as) above ther (they) forfeit all that set apart in this conveyance and is to be equally divided with our heirs that does not attempt to set aside the above conveyance."

It is, as stated by appellant's counsel, a matter of common

knowledge among the courts and lawyers, that provisions similar to that last quoted are frequently found in wills and rarely found in deeds of conveyance; but, in this instance, said provision is not inconsistent with the intention of the grantors, clearly manifested by the remainder of the instrument, to convey to, and vest in, the grantees a present, irrevocable interest or estate in remainder, but, by virtue of the life estates reserved to the grantors, to postpone the enjoyment of the grantees in possession until the death of both of the grantors. Swails v. Bushart, 2 Head 561; Wall's Adm'r v. Ward, 2 Swan 648, 654; Jones v. Hicks, 2 Shan. Cas. 635; Stamper v. Venable, 117 Tenn. 557, 564, 97 S. W. 812; Couch v. Hoover, 18 Tenn. App. 523, 79 S. W. (2d) 807.

It is obvious, we think, that the so-called "forfeiture clause" above quoted had reference exclusively to the sum of $2000 to be paid by the grantees to each of three other children of the grantors, to secure which a lien was expressly retained on the land conveyed. The condition that the grantees should pay to each of the other three children of the grantors the sum of $2000 at the death of the grantors, did not affect the operation of the instrument as a deed of conveyance effective in praesenti. It was so ruled in Swails v. Bushart, supra, 2 Head at page 563.

Whether William Prichard and John Prichard, or either of them, may enforce said forfeiture provision against complainant Bettie Prichard Smith (since she has attempted to set aside the "conveyance" in question) is not an issue in this case. No question as to the validity or enforceability of said provision arises on the record now before us. By the terms of the deed, the liability of the grantees, and the lien upon the land, for the sum of $6000, with interest thereon from the death of the grantors, remains the same in amount, whether the forfeiture provision is enforceable or not.

It results that the defendants' assignments of error are overruled and the decree of the chancery court, dismissing complainant's bill and adjudging that she pay all the costs, is affirmed, and a decree will be entered accordingly.

The costs of the appeal will be adjudged against the appellant Bettie Prichard Smith. It appears that the complainant began this suit upon the oath in forma pauperis, and is likewise prosecuting her appeal; but, during the pendency of the cause in the chancery court, a written "stipulation and agreement," signed by the complainant and the defendants Ed Prichard and J. F. Prichard and the respective solicitors of said parties, was filed in the cause, as follows:

"In this cause, the defendants having moved the Court that the complainant be required to give security for costs of suit, she having taken the oath provided for poor persons in lieu of bond for costs, it is stipulated and agreed as follows:

"If, at the final conclusion of the litigation in this cause, the complainant shall have been taxed with the costs of suit, or any portion thereof, it is agreed that, in lieu of execution of cost bond by complainant, the defendant J. F. Prichard, who is the custodian of a certain note executed by himself and the defendant, Ed Prichard, November 24, 1913, in the original principal sum of $2000.00 and which note, with interest thereon from the date of the death of J. C. Prichard is owing by the defendant Ed Prichard to the complainant Bettie Smith, in the event she shall fail to obtain a decree herein setting aside the deed in controversy, copied into the original bill, shall deliver said note to J. H. Ligon, C & M of this Court, or his successor in office, instead of to the complainant Bettie Smith, and that the defendant Ed Prichard may pay the amount due on said note into the hands of the C & M of this Court, and receive said note from the C & M, and that such payment of said note by the defendant Ed Prichard shall exonerate him from all further liability thereon; and that from the proceeds of said note the C & M of this Court shall deduct the amount of any costs that may be taxed against the complainant herein, and pay out same to the parties entitled, the remainder only of the proceeds of said note to be paid to the complainant Bettie Smith."

In addition to the recitals and agreements above set forth, the written stipulation contained a copy of the note and a further stipulation not material to the question of costs; but below the signatures to the foregoing stipulation and agreement, appears in additional stipulation in these words:

"It being understood that Bettie Smith is pledging her interest in the land or its proceeds as a cost bond.

 "C. H. Rutherford
 "Solr. for complainant
 "Bettie Prichard Smith
 "Complaint

"Ent. in Minute Bk. 26 page 273."

 In the chancery court, a party becoming surety for costs is subject to the discretionary power of the Chancellor over the adjudication of the costs. An appeal in a chancery case vacates the decree below, and the appellate court hears the case de novo, and may, upon dismissal of the suit, adjudge the costs of the appeal, as well as the costs of the chancery court, against the complainant and the surety on the prosecution bond below. Ogg v. Leinart, 1 Heisk. 40, 43; Sullivan v. Eason, 8 Tenn. App. 429, 433; Furst & Furst v. Freels, 9 Tenn. App. 423, 436; Gulf Refining Co. v. Frazier, 15 Tenn. App. 662, 704.

 Inasmuch as complainant pledged the aforementioned note in lieu of a cost bond, for any and all costs taxed against her in this cause, it would seem that the costs of the appeal should be paid

336

out of the proceeds of the property thus pledged, upon the same principle, and to the same extent, that a surety on a prosecution bond below is liable for the costs of appeal; and we so hold.

The cause will, therefore, be remanded to the chancery court of Smith County for the collection of the aforesaid note by the clerk & master, and the payment of the costs, including the costs of the appeal, and the proper disbursement of the balance, if any.

Crownover and Felts, JJ., concur.