## UNITED STATES *v.* COOK, EXECUTOR OF EAMES, ET AL.

### APPEAL FROM THE COURT OF CLAIMS.

No. 80.  Argued January 13, 1922.—Decided February 27, 1922.

Claimants contracted with the Government to plan and supervise the construction of a public building for a fee, to be paid on monthly estimates and final completion, of 5 per cent. of the actual cost of the work executed from their drawings and specifications and under their supervision, as shown upon the books of the Supervising Architect by the net amount of construction con-

tracts awarded and proposals accepted for additions or. deductions. The building was delayed ·by an earthquake and fire and Congress made an additional appropriation to be paid the building ·contractor upon its completion, to recoup him for actually resulting losses due to increased prices of labor and materials; denying him any profit under his contract; and this extra payment was shown on .the books of the Supervising Architect—but no appropriation was made for the claimants, although they had suffered likewise and had applied to Congress unsuccessfully.

*Held:* (1) The allowance to, the building contractor was not a gratuity but an alteration of his contract based on a moral consideration. P. 526.

(2) Claimants were entitled to their percentage on the additional amount so paid, since their equity was equally as strong and the words of their contract permitted. P. 528.

55 Ct. Clms. 215, affirmed.

APPEAL from a judgment of the Court of Claims upholding a claim of architects for fees under a contract with the United States.

*Mr. Assistant Attorney General Lovett* for·the United States.

*Mr. William R. Harr,* with whom *Mr. Chas. H. Bates* was on the brief, for appellees.

MR. CHIEF JUSTICE TAFT delivered the opinion of· the court.

Eames and Young, architects of St. Louis, made the plans for a custom house at San Francisco and supervised its construction. They were to receive compensation at the rate of five per centum upon the actual cost of the work. The work was long delayed, three years, by the San Francisco earthquake and fire which increased the cost of labor and materials. Congress authorized the Secretary of the Treasury within a limit of $250,000 to make good to the contractor his loss from the· delay and enhanced prices so that he should receive enough to re-

coup him for his outlay but without profit. The architects claimed from the Government five per centum on the extra amount paid to the contractor. Eames died and Cook, his executor, joining with the surviving partner, Young, brought this suit in the Court of Claims. The Court of Claims gave judgment for $5,095.38, the full amount of the claim. The Government appeals.

The contract provided that the fee of the architects was to be computed at the rate of five per centum upon " the actual cost of the work executed from the drawings and specifications, and under their supervision, as shown upon the books of the Supervising Architect's Office, by the net amounts of contracts awarded and proposals accepted for additions or deductions." Until the actual cost could be determined, the monthly payments were to be on the proposed cost as estimated from time to time by the Government, and upon the completion of the building the entire fee was to be computed on the actual construction cost of the work executed from the architects' drawings and specifications and under their supervision, as shown upon the books of the Supervising Architect's Office. The extra amount paid the contractor was in fact shown upon the books of the Supervising Architect's Office though not of course included in the total cost stated before the passage of the act and the ascertainment of the amount due thereunder.

The clause in the Sundry Civil Appropriation Act, approved May 27, 1908, c. 200, 35 Stat. 318, providing for an extra payment to the contractor was as follows:

" The Secretary of the Treasury is authorized, upon completion of the custom-house in the city of San Francisco, California, to pay to Thomas Butler, the contractor for the construction of said building, in addition to the contract price thereof, such sum as may be equitable and just to reimburse said contractor for any loss actually sus-

tained in consequence of the earthquake and great fire of April, nineteen hundred and six, not exceeding the sum of two hundred and fifty thousand dollars: *Provided,* That the amount allowed said Thomas Butler shall not be sufficient to enable him to make any profit out of the making and execution of said contract."

The committee appointed by the Secretary of the Treasury to adjust the claim found that the actual increased cost to the contractor of constructing the building due to delay and the increased prices of labor and material was $101,907.66. During the delay of three years, the architects under their subsidiary contract had to keep a superintendent of construction on the building at a cost of $6,700, and their office and certain contingent expenses in San Francisco went on.

The Government contends that the amount awarded to the contractor under the act was a mere gratuity and can not be properly treated as a part of the cost of construction. We can not agree to this view. It seems to us that this was an alteration of the contract in response to equitable considerations. It was a change from unit prices to a cost plus nothing contract. It was not a mere lump sum gift. It was the result of inspection and examination as directed by Congress, and an award by actual estimates. It was the result of a change in the contract terms made by the principal in whose name and for whose benefit the contract was entered into, and acquiesced in by the contractor. It added to " the actual cost of the work executed from the drawings and specifications and under [the architects'] supervision, as shown upon the books of the Supervising Architect's Office, by the net amounts of contracts awarded and proposals accepted for additions or deductions." The additional sum was part of the net amount of the contracts awarded, as they were legally modified by the agreement of the parties embodied in the clause of the congressional act. The

architects' subsidiary contract for compensation contemplated changes in the amount of actual cost by additions and deductions, *i. e.,* by changes in the main contract, and a postponement of final calculation until the full actual cost had been ascertained. The change by legislation was, of course, not within the minds of the parties when the work was entered upon, because the earthquake and fire and change of situation were not anticipated. This, however, is not enough to exclude it from the operation of the architects' contract if the change can be brought fairly within the terms.

It is not helpful to point out that the United States need not have varied the terms of the main contract, or that no consideration moved to it in the change, or that the contractor could not have recovered anything additional in a suit without the legislation. There was the moral consideration which properly induced the recognition of an honorable obligation and turned an unenforceable equity into a binding and effective provision.

Reference is made to *Frisbie* v. *United States,* 157 U. S. 166, and other cases in which a pension is said to be a gift and not a vested right. These cases have no bearing on the one before us. They merely establish that Congress in shaping the form of its bounty may impose conditions and limitations on its acquisition and enjoyment by the beneficiaries which it could not impose on the use and enjoyment by them of a vested right.

An authority more helpful in the present case is that of *United States* v. *Realty Co.,* 163 U. S. 427. The question there was the validity of an appropriation by Congress of money to reimburse sugar planters who on the faith of a sugar bounty provided by statute, *Field* v. *Clark,* 143 U. S. 649, 694, had planted a crop and were subjected to heavy loss by repeal of the statute. The Government objected that the sugar bounty was unconstitutional and that Congress could not pay such a bounty either by

prior appropriation or by reimbursement. This court found it unnecessary to decide whether a sugar bounty was beyond the power of Congress; but assuming its invalidity, held that even though, in its purely legal aspect, an invalid law could not be made the basis of a legal claim, the planter had acquired a claim against the Government of " an equitable, moral or honorary nature," that Congress had power to pay the debts of the United States, that the Nation, speaking broadly, owed a " debt " to an individual when his claim grew out of right and justice; when, in other words, it was based upon considerations of a moral or merely honorary nature, and that the power of Congress extended to the payment of such a debt. The claim of the contractor in this case was more concrete than that of the sugar planter and was equitably recognized by Congress as part of the cost of the building to be paid by the Government.

The architects had just as great an equity in this matter as the contractor. The delays and rise in the prices affected their expenses proportionately. When, therefore, the contractor has received more for the work, it is just that the architects receive a percentage on what has thus been recognized by the Government as a " debt " to the contractor for his work, and the words of the contract are inclusive enough to permit this to be done.

The fact that the architects unsuccessfuly applied to Congress for relief similar to that accorded to the contractor is relied on as an admission by the architects that only by congressional action could they have equity done them. We do not consider this material or important. We can not say from anything before us but that the reason why Congress did not make special provision for the architects was the assumption that their equities might be worked out under their contract as they have been by this judgment of the Court of Claims.

*Affirmed.*