**SELIGMAN'S, Inc., v. UNITED STATES.**
**No. 125.**

District Court, W. D. Louisiana, Monroe Division.

Dec. 23, 1939.

Jacob S. Seligman, of Monroe, La., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Sp. Asst. to Atty. Gen. (Edward H. Horton, Sp. Asst. to Atty. Gen., and Harvey G. Fields, U. S. Atty., of Shreveport, La., of counsel), for defendant.

PORTERIE, District Judge.

The essential facts necessary to be considered in connection with defendant's motion to dismiss may be briefly summarized as follows:

Plaintiff is a Louisiana corporation with its domicile and main office at Bastrop, Morehouse Parish, Louisiana, and since 1933 has operated business establishments at Bastrop and Bonita, both in Morehouse Parish, Louisiana, where it engaged in the sale of goods, wares and merchandise at retail.

Plaintiff at the first moment of January 6, 1936, had on hand and held for sale various articles which had been processed wholly or in chief value from cotton, none of which goods had been processed by plaintiff, but all of which had been purchased from manufacturers, wholesalers, and jobbers as a finished product and ready for sale at retail. When the goods were sold to plaintiff by the manufacturers, wholesalers, and jobbers from whom plaintiff had purchased, plaintiff was forced to and did pay the taxes imposed thereon by the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq., said taxes having been included in the price for the goods so purchased by plaintiff. Immediately after January 6, 1936, plaintiff reduced its previous retail prices at both Bastrop and Bonita, Louisiana, on its cotton goods held for sale at the first moment of January 6, 1936. As a result of this reduction in retail prices by plaintiff, it absorbed the tax in the amount of $553.10, as to its stock at Bastrop, Louisiana, and $294.76, as to its stock at Bonita, Louisiana. Plaintiff filed its claims for refund of taxes on said cotton goods on P. T. Form 72, based on Schedule K-P.T. Form 75, as instructed by the Internal Revenue Service of the Treasury Department. Said claims were filed prior to December 31, 1936, but were returned to plaintiff on January 26, 1937, by the Collector of Internal Revenue, District of Louisiana, with instructions to complete the forms by stating that the amount of re-

imbursement received or to be received from processors or vendors was "none", and by further stating that the amount of tax passed on to vendees or included in the sale price was "none", which instructions were duly followed. Plaintiff, on January 28, 1937, returned the forms to the Collector filled out as requested.

Plaintiff then avers "that all conditions precedent to the allowance of said claims for refund have been performed or occurred; that it has complied with all regulations prescribed by law necessary to the allowance of its claim; but that despite said performance and compliance, the Commissioner of Internal Revenue, without any legal cause or justification, has refused and denied plaintiff's claims for refund of all tax absorbed by it by letter dated August 3rd, 1937." (Complaint, par. 10.)

The recovery sought by plaintiff is in the sum of $847.86, representing the floor stocks tax, as above explained.

Plaintiff invoked the jurisdiction of this court under the provisions of Section 905 of the Revenue Act of 1936, c. 690, 49 Stat. 1748, U.S.C.Supp. IV, Title 7, Sec. 647, 7 U.S.C.A. § 647, and, also, under Section 24 (20) of the Judicial Code, U.S.C., Title 28, Sec. 41(20), 28 U.S.C.A. § 41(20), commonly known as the Tucker Act.

Defendant has filed a motion to dismiss plaintiff's complaint on the following grounds:

(1) The complaint on its face shows that this court lacks jurisdiction over the subject matter.

(2) The United States has not consented to be sued upon the claim set forth by plaintiff.

(3) The provisions of Title IV, Sec. 602 (i) of the Revenue Act of 1936, 49 Stat. 1740, U.S.C.Supp. IV, Title 7, Sec. 642(i), 7 U.S.C.A. § 642(i), specifically deprive this court of jurisdiction to review the Commissioner's determination with respect to any payment or refund to plaintiff of the amounts sought to be recovered.

(4) Plaintiff's complaint fails to state a claim upon which any relief may be granted by this court.

Congress, by the provisions of Section 602 (i) of Title IV of the Revenue Act of 1936, has provided in clear and unequivocal language as follows:

"Sec. 602 [§ 642]. *Floor stocks as of January 6, 1936.*

\*　　\*　　\*　　\*　　\*　　\*

"(i) The determination of the Commissioner with respect to any payment under this section shall be final and no court shall have jurisdiction to review such determination."

The main question presented is whether this court, in view of the provisions of Section 602 (i) of Title IV of the Revenue Act of 1936, has jurisdiction to review the final determination of the Commissioner of Internal Revenue and to render judgment against the defendant in this action.

It would seem at first blush that such a provision, as above quoted, taken by itself, free of contextual relation, must be unconstitutional. By examination and study of the Act, however, we have become convinced otherwise.

We consulted; first, Public—No. 740—74th Congress, H.R. 12395, "Revenue Act of 1936", and examined its Table of Contents. Under Title IV—Export, Charitable, etc., Refunds and Floor Stocks Adjustment Under Agricultural Adjustment Act, we find only four sections, 601 to 604, 7 U.S.C.A. §§ 641–643. Sec. 602 is entitled "Floor Stocks as of January 6, 1936." It is there, in Sec. 602, we find par. (i). The important point to note here is that the tax on floor stocks is that tax paid by any person (generally dealer, wholesaler or retailer) indirectly, not directly. The tax became a part of the purchase price.

■ Plaintiff did not pay this tax as a tax, such as was the case when the processor paid it initially, then passed it, included in the selling price, to the dealer. The Congress extended a gratuity to plaintiff in his situation when it extended him some means of payment, afforded by the provisions of Title IV. Concurrently, however, no vested right was created by the recognition of this mere moral obligation, such as would induce or compel Congress to create jurisdiction for plaintiff in the Federal courts. The restriction of plaintiff to an administrative hearing on the gratuity is not the taking of property without due process.

■ The United States is not suable as of common right. United States v. Clarke, 8 Pet. 436, 8 L.Ed. 1001; Reid v. United States, 211 U.S. 529, 538, 29 S.Ct. 171, 53 L.Ed. 313; United States v. Michel, 282 U. S. 656, 659, 51 S.Ct. 284, 75 L.Ed. 598; Ickes v. Fox, 300 U.S. 82, 96, 57 S.Ct. 412, 81 L.Ed. 525; Munro v. United States, 303 U. S. 36, 41, 58 S.Ct. 421, 82 L.Ed. 633.

■ The United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. United States v. Babcock, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011.

Going back to the Table of Contents, we find that the tax paid directly by the processor is dealt with, as to its refund, under Title VII—Refunds of Amounts Collected Under the Agricultural Adjustment Act. 7 U.S.C.A. §§ 623 note, 644–659. Under this Title VII is found Sec. 905, reading as follows:

"Sec. 905 [§ 647]. *Jurisdiction of courts.*

"Concurrent with the Court of Claims, the District Courts of the United States (except as provided in section 906 [648] of this title) shall have jurisdiction of cases to which this title applies, regardless of the amount in controversy, if such district courts would have had jurisdiction of such cases but for limitations under the Judicial Code, as amended, on jurisdiction of such courts based upon the amount in controversy. The United States Customs Court shall not have jurisdiction of any such cases."

The mistake made by plaintiff is in believing that this Sec. 905 has something to do with its case, when it has nothing in the world to do with it.

■ Plaintiff never paid the tax directly; it never paid the tax, eo nomine. The tax was included merely in the purchase price of the cotton goods it bought. The Congress, as is shown by the report of the Committee on Ways and Means of the Revenue Bill of 1936, by Section 602, intended to provide a gratuity, not required by law, whereby persons who were not processors or persons liable for the processing tax imposed by the Agricultural Adjustment Act, as amended, might under certain conditions obtain the payment of an amount equal to the processing tax on certain goods held for sale at the first moment of January 6, 1936. Congress declared that the determination of the Commissioner of Internal Revenue, with respect to any payment under Title IV, Sec. 602, 7 U.S.C.A. § 642, should be final and not subject to review.

The report of the Committee on Ways and Means on the Revenue Bill of 1936, H.Rep. No. 2475, 74th Cong., 2d Sess., pp. 15, 16, shows that Congress intended Section 602 of the Revenue Act of 1936 to be "purely remedial" and to provide "a form of relief which, however justifiable as a matter of equity and sound policy, is not required by law * * *."

Thus, *claims for payment* under the provisions of Section 602 of Title IV of the Revenue Act of 1936, on articles processed wholly or in chief value from a commodity subject to processing tax and held for sale or other disposition (including manufacturing or further processing) at the first moment of January 6, 1936, are to be carefully distinguished from *claims for refund* arising under Title VII of the Revenue Act of 1936.

The court in this case is, therefore, dealing with a *gratuity,* the payment of which is subject wholly to the conditions laid down by Congress. Clearly this gratuity was one entirely within the dominion of congressional power, which Congress was at liberty "to give, withhold, distribute, or recall, at its discretion. Walton v. Cotton, 19 How. 355 [15 L.Ed. 658]." United States ex rel. Burnett v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 43, 27 L.Ed. 352; see also United States v. Cook, 257 U.S. 525, 527, 42 S.Ct. 200, 66 L. Ed. 350; Silberschein v. United States, 266 U.S. 221, 225, 45 S.Ct. 69, 69 L.Ed. 256.

■ The plaintiff places much reliance upon the case of Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. The plaintiff there was the actual taxpayer —the manufacturer or processor, who actually paid the tax. In such case, Title VII of the Act does provide for judicial review of the administrative findings. Sec. 905; or U.S.C.A., Title 7, Sec. 647—District Court, and Sec. 648—Circuit Court of Appeals.

However, in the instant case we are dealing with the retailer, who did not himself pay the tax. Plaintiff only absorbed the tax by paying an increased price to the processor. His loss by having had to reduce prices on his cotton goods is only indirectly traceable to the effect of the tax imposed by the Agricultural Adjustment Act, declared unconstitutional by United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

Quoting from the Anniston case, 57 S.Ct. at page 821, we have: "According to the allegations of the complaint, the petitioner initially did bear the burden of the unconstitutional tax, as petitioner paid it."

Further, from 57 S.Ct. at page 822, we take: "The circumstance that under title VII, here involved, there is no provision for making a refund to particular persons, to whom the burden of the invalid exaction may be found to have been shifted, presents no sound distinction so far as the claimant is concerned."

The use of the phrase "floor stock taxes" in the Anniston opinion seems to be erroneous. The phrase should be "processing tax." In support of this view, we refer to 57 S.Ct. at page 819, where the court speaks of floor stock taxes, citing Section 905 and saying: "Second.—With respect to floor stock taxes, no serious question is presented as to the adequacy of the remedy. The remedy by suit is expressly preserved. If the Commissioner refuses refund, suit may be brought against the United States in the Court of Claims or in the District Court for the recovery of the amount claimed to have been illegally exacted. Section 905 (7 U.S.C.A. § 647)."

Section 905 gives district courts and courts of claim concurrent jurisdiction "of cases to which this title applies." The title is VII, relating to taxes "paid by or collected from any claimant as tax" (Revenue Act of 1936, Sec. 902, 7 U.S.C.A. § 644), thus eliminating the inclusion of floor stock taxes, which mean invariably a shifted burden, not the direct tax.

Therefore, it would seem that there is an unfortunate choice of the phrase "floor stock taxes." The section cited, and related sections, do not speak of "floor stock taxes" at all. This court is adhering in the preparation of this opinion to the belief that Title IV and Title VII of the General Revenue Act of 1936 are two separate and distinct acts of congressional legislation. The major inference from this premise is that Sections 902-917 of Title VII, Sections 644-659 of Title 7, U.S.C.A., wherein the phrase "floor stock tax" never appears, cannot be transported into Title IV, Sections 601-603, 7 U.S.C.A. §§ 641-643, wherein "floor stock tax" does appear, and thus made to (1) give, and then (2) delimit, jurisdiction of the courts, when, as this opinion has pointed out, there has been no court jurisdiction intended at all by the Congress for cases of payment under Title IV—the sole and only title under which payment for floor stock taxes is provided.

A comparison of the original printing arrangement of Titles IV and VII, as found in Public—No. 740—74th Congress, H.R. 12395, with the printing arrangement as made later when this legislation was physically placed in the U.S.C.A. compilation, Title 7, Sections 641 to 659, both inclusive, discloses that the subdivision and separation into two titles, with description of each, as found in Pub.Doc.No. 740, is totally omitted in U.S.C.A., Title 7. This tends to the use

of Section 905—Jurisdiction of Courts—of Title VII in considering the application of provisions of Title IV.

Analogous criticism may be made of the use of the phrase "floor stock taxes" found in the case of Butler et al. v. Carney, D.C. 17 F.Supp. 133.

Plaintiff by the nature of its claim, being a gratuity, may only use for recovery the provisions of Title IV, wherein no court jurisdiction is provided; it may not use provisions of Title VII to maintain itself in court. So much for this phase of the jurisdictional question.

■ But it requests jurisdiction, also, under Title 28 U.S.C.A. § 41, Judicial Code, Section 24 (the Tucker Act). The Tucker Act is general in its nature and must give way to special statutes, such as Section 602 (i) of the Revenue Act of 1936, enacted by Congress to cover special cases. This is established abundantly by the decisions. See Missouri v. Ross, 299 U.S. 72, 76, 57 S. Ct. 60, 81 L.Ed. 46; Townsend v. Little, 109 U.S. 504, 512, 3 S.Ct. 357, 27 L.Ed. 1012; City of Tulsa v. Southwestern Bell Telephone Co., 10 Cir., 75 F.2d 343, 351.

■ Further, when there is conflict, inconsistency, or repugnancy between two acts, the later act controls and repeals the earlier act. United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043; also, United States v. Tynen, 11 Wall. 88, 92, 20 L.Ed. 153.

■ One may ask what is there at law and in court decisions to authorize Congress to restrict or take away jurisdiction once conferred. Congress, in its unlimited discretion, may constitutionally give, withhold, restrict or take away altogether the jurisdiction of the district courts of the United States. The lower federal courts do not derive their jurisdiction directly from Article III of the Constitution, U.S.C.A., but are created by and acquire their jurisdiction from Acts of Congress. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Stevenson v. Fain, 195 U.S. 165, 167, 25 S.Ct. 6, 49 L.Ed. 142; Ex parte Wisner, 203 U.S. 449, 453, 27 S.Ct. 150, 51 L.Ed. 264; Sheldon v. Sill, 8 How. 441, 448, 12 L.Ed. 1147. They are thus courts of limited jurisdiction and can exercise only such powers as Congress, within the limits of the Constitution, confers upon them. Ex parte Robinson, 19 Wall. 505, 511, 22 L.Ed. 205; Kline v. Burke Const. Co., 260 U.S. 226, 234, 43 S.Ct. 79,

67 L.Ed. 226, 24 A.L.R. 1077; Gillis v. California, 293 U.S. 62, 66, 55 S.Ct. 4, 79 L.Ed. 199; Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985. It results that Congress, so long as it does not expand the jurisdiction beyond that specified in Article III, may give, withhold, or take away jurisdiction. Seldon v. Sill, supra, 8 How. page 448, 12 L. Ed. 1147; De Groot v. United States, 5 Wall. 419, 432, 18 L.Ed. 700; Case of the Sewing Machine Companies, 18 Wall. 553, 577, 21 L. Ed. 914; Cary v. Curtis, 3 How. 236, 244, 245, 11 L.Ed. 576; Kentucky v. Powers, 201 U.S. 1, 24, 26 S.Ct. 387, 50 L.Ed. 633, 5 Ann.Cas. 692. A necessary consequence of the principle "that the courts created by statute must look to the statute as the warrant for their authority" (Cary v. Curtis, supra, 3 How. page 245, 11 L.Ed. 576) is that no case can be decided by a district court where Congress has specifically denied to the district court jurisdiction to review the determination of a public official, declared to be final by the Congress.

■ It is further established by the decisions of the Supreme Court that an express or implied repeal of the jurisdictional statute leaves both the trial court and the appellate court powerless to decide cases which at the time of repeal were pending in the trial court. Merchants' Insurance Company v. Ritchie, 5 Wall. 541, 544, 18 L.Ed. 540; The Assessors v. Osborne, 9 Wall. 567, 575, 19 L.Ed. 748; Hallowell v. Commons, 239 U.S. 506, 509, 36 S.Ct. 202, 60 L.Ed. 409. And the Supreme Court has gone so far as to hold that even where the repeal occurred after decision by the trial court, and pending review by the Supreme Court, the case must be sent back to the trial court with directions to dismiss for want of jurisdiction, for "when the root is cut the branches fall." Smallwood v. Gallardo, 275 U.S. 56, 62, 48 S.Ct. 23, 24, 72 L.Ed. 152; cf. Western Union Tel. Co. v. Louisville & N. R. Co., 258 U.S. 13, 19, 42 S.Ct. 258, 66 L.Ed. 437.

■ Since Congress has the sole power to define the jurisdiction of the inferior federal courts, "the statute which does prescribe limits of their jurisdiction, cannot be in conflict with the Constitution, unless it confers powers not enumerated therein." Sheldon v. Sill, 8 How. 441, 449, 12 L.Ed. 1147.

Congress, by the provisions of Section 602 (i) of the Revenue Act of 1936, has withdrawn from this court jurisdiction to hear and determine this action, and lacking juris-

diction, this court is powerless to grant any relief to the plaintiff under the allegations of plaintiff's complaint.

Defendant's motion to dismiss must prevail and judgment will be signed accordingly, casting the costs on the plaintiff.