CAMPBELL *v.* OLIPHANT *et al.*

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

JOE FRASSRAND, of Chattanooga, for appellant.

CHARLES A. NOONE, of Chattanooga, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The bill herein was filed by Haiden Campbell, appellant, as the father and only heir of Charles Campbell, deceased, against the executor and others under the will of Charles Campbell, deceased, asking a declaration of rights to a certain fund in the hands of the executor.

The Chancellor held the funds assets of the estate of Charles Campbell, deceased, and should be administered by the executor. The facts were stipulated. From an adverse decree the father has duly perfected his appeal. In the reply brief the facts are fully and fairly stated as follows:

"The appellant is the father of Charles Campbell, who lost his life on a flight over Austria during the recent war. The appellee Oliphant is the executor named in the last will and testament of Charles Campbell, made in February, 1944, shortly before he became a member of the Air Corps. Charles was reported missing in action on July 26, 1944; and an official finding of death was made by the War Department on July 27, 1945. Later the date of his actual death was established as of July 26, 1944, the information as to such fact not having been received by the Department, apparently, until a short time before December 13, 1945.

"During the time intervening between the date Charles was reported missing in action and the official date of his death there accrued to him as his salary or compensation the sum now involved in this case.

"Shortly after the official date of death, which was a year after Charles was reported missing, the appellee Oliphant probated the will, qualified as executor, and has been since acting in that capacity.

"In January, 1946, there was paid to the executor the sum of $2523.88, being the accrued compensation, less certain deductions, the correctness of which is not involved."

The fund in question was paid to the executor by the United States Government by virtue of what is known as the "Missing Persons Act". This act is embraced in 50 U. S. C. A. Appendix, secs. 1001-1017, being an Act of March 7, 1942, Chap. 166, 56 Stat. 143, as amended by Act of July 1, 1944, Chap. 371, 58 Stat. 679. The act provides in substance that: "Any person in the active service who is officially determined to be absent in a status of missing, missing in action, interned in a neutral country, captured by an enemy, beleaguered or besieged will, during the time he is so missing, etc., be entitled to receive or to have credited to his account the same pay and allowances to which he was entitled at the beginning of such period of absence or to which he may become entitled thereafter, until it is established or determined that he is dead. During such period of absence, any allotment in effect at the beginning of absence, including allotments for the purchase of United States bonds, may be continued by the Government. After the expiration of twelve months, a review of the case will be made, followed by a determination that the person is dead or that he is presumed to be still living. These provisions are administered by the branch of the armed service of which the person in question was a member." American Law of Veterans, sect. 913, p. 722.

In arriving at the amount paid in the instant case the General Accounting Office of the United States based the amount on "Base Pay", "Foreign Service Pay", "Flying Pay" and "Subsistence Allowance," from July 1, 1944

through July 27, 1945, all of which totaled $3468.28. From this amount certain debits, such as allotments, meals prior to reported missing in action, etc., were deducted leaving a balance due of $2523.88, which was remitted to the executor of Charles Campbell, deceased. These are the credits and debits that Charles Campbell was entitled to for one year after he was reported missing, it not appearing sooner that he was dead. At the end of the year (twelve months), it not appearing to the contrary, ''death shall be presumed to have occurred for the purposes of termination of crediting pay and allowances, . . . and such date shall be the day following the day of expiration of an absence of twelve months, . . .'' 50 U. S. C A. Appendix, sec. 1005.

The appellant, father, says that this fund was not ''earned, due or owing'' to Charles Campbell at his death and that Charles had no vested interest in it which could pass under the will: further ''that this was a contingent gratuity payable to the named heirs or kinsmen of the deceased in the event the missing soldier was not found alive during the year.''

In pressing this contention it is the theory of the appellant that the fund here in question comes in the same classification as a ''death gratuity'' which is awarded to members of the Army as provided under section 903 of 10 U. S. C. A. This section provides for a ''six month's gratuity pay'' for those who die from ''wounds or disease, not the result of his own misconduct'', and that this pay shall be to specified persons named in the act. It is strictly a death gratuity and is not a debt or money due the decedent. It therefore cannot become part of his estate which is subject to be willed by the decedent. The appellant received the ''gratuity pay'' provided for under this act. No question is here made concerning it.

There is nothing in the "Missing Persons Act" to indicate that the Congress had any thought of tying it in with or to the "Death Gratuity Act." This act, the "Missing Persons Act", is clearly for the use and benefit of the soldier. It is made to him presumptively as though he were alive. Under the act he is alive for at least twelve months unless the contrary appears. At the end of twelve months, nothing to the contrary appearing, he is presumed dead and his pay and allowances stopped. There is no gratuity. It is a contract with the soldier made by congressional enactment which becomes a part of every soldier's contract with the government. It, by this very act, becomes an agreement on the part of the government that such and such will be done under certain conditions. For this reason the fund created under this act as paid to the executor herein became a part of the deceased soldier's estate.

Considering some pertinent expressions in the Act we see that the Government regarded the sum paid herein as a debt from it to Charles Campbell. The obligation is absolute.

Any person missing, while thus carried, shall "be entitled to receive or to have credited to his account." "Entitlement" shall terminate on finding of death. Also: "Provided, that such entitlement to pay and allowances shall not terminate upon expiration of term of service during absence and in case of death during absence shall not terminate earlier than the dates herein prescribed." 50 U. S. C. A. Appendix, sec. 1002. And section 9 of the Act, 50 U. S. C. A. Appendix, sec. 1009, reads, so far as pertinent, as follows: "The head of the department concerned, or such subordinate as he may designate, shall have authority to make all determinations necessary in the adminitration of this Act, and for the purposes of this

Act determinations so made shall be conclusive as to death or finding of death," etc. "Payment or settlement of an account made pursuant to a report, determination, or finding of death shall not be recovered or reopened by reason of a subsequent report or determination which fixes a date of death except that an account shall be reopened and settled upon the basis of any date of death so fixed which is later than that used as a basis for prior settlement. Determinations are authorized to be made by the head of the department concerned, or by such subordinate as he may designate, of entitlement of any person, under provisions of this Act, to pay and allowances, including credits and charges in his account, and all such determinations shall be conclusive," etc.

■ This act resembles in its benevolent purpose pensions, compensation allowances, hospital and other privileges accorded to members of the Army and Navy or their dependents, but it differs from them fundamentally in legal incidents. Pensions, compensation allowances, and death gratuities are gratuities. They involve no agreement of the parties; and the grant of them creates no vested right. *United States* v. *Cook*, 257 U. S. 525, 527, 42 S. Ct. 200, 66 L. Ed. 350. On the other hand, this act ("Missing Persons Act") is a part of the enlistment contract or agreement between Charles Campbell and the Government. It therefore is property and creates a vested right. This contract is to be found in part in his enlistment contract, in part in the statutes enacted by the Congress and the regulations promulgated thereunder.

For the reasons given the decree of the Chancellor is affirmed.

All concur.