**SCAMMAN, Extrx., Plaintiff, v. SCAMMAN, Defendant.**

Common Pleas Court, Montgomery County.

No. 99401.  Decided February 23, 1950.

Landis, Ferguson, Bieser & Greer, Dayton, for plaintiff.
Scharrer, Scharrer & Hanaghan, Dayton, for defendant.

## OPINION

By MILLS, J.

Plaintiff herein, executrix of the estate of George E. Scamman, deceased, filed a petition in this court alleging that George E. Scamman died testate; that he was a resident of Scarboro, Maine; that he died while in active duty for the United States Army on or about June 30th, 1943, and was declared officially dead by the United States Army on January 21st, 1946; that the last will and testament was duly admitted to Probate, plaintiff being named as executrix of said last will.

It appears that Mary E. Scamman is the widow of George E. Scamman, deceased, and as such obtained possession of the assets belonging to the estate of decedent, in the sum of $6,715.65, representing arrearage of pay from the United States Army due said decedent at the time of his death. Said sum was paid to the defendant by check dated May 28th, 1946 by the accounting officers of the United States Army.

Plaintiff claims that in her fiduciary capacity as executrix it is her duty to collect the assets of said decedent according to law; that defendant has refused and still refuses to pay the same.

The defendant admits all the facts with the exception that it is the duty of the executrix herein to collect the money from said defendant, and as her defense to the petition, defendant says she was married to George E. Scammon, deceased, on March 11th, 1943 and that he was a second lieutenant, declared officially dead by the United States Army on January 21st, 1946; that she was his wife up until the time he was declared officially dead and that there was due to her from said deceased husband and the United States Army the sum collected. She further says settlement was made with her according to the Act of February 28th, 1946, P. L. 306, which provides in substance as follows:

"Hereafter in the settlement of the accounts of deceased officers or enlisted persons of the army, where no demand is presented by a duly appointed legal representative of the estate, the accounting officers may allow the amount found due to the decedent's widow, widower, or legal heirs in the following order of precedence: First, to the widow or widower, etc * * *".

Defendant further says no demand was presented to the accounting officers of the United States Army by the plaintiff, and prays plaintiff's petition be dismissed.

To this answer a demurrer was filed by plaintiff herein, defendant, having in her answer admitted all the allegations of plaintiff's petition, and set up as her affirmative defense the provisions of the Act of February 28, 1946, Public Laws, 306, and payment pursuant thereto, the plaintiff challenges the sufficiency of this defense.

Plaintiff herein claims that the legal rights of the decedent's heirs or devisees vested at the time of his death and that no subsequent legislative act could constitutionally divest them of such right and cites the authority of 16 Am. Jur., Descent and Distribution, Section 16:

"There is a right to a succession to an ancestor's property after his death according to the law as it existed at the time of his death. Such right is a vested right constituting property and entitled to constitutional protection as such, and hence, any statute depriving an heir or distributee to such right, without due process of law is unconstitutional and void. Accordingly, an estate must be distributed according to the laws of distribution in force at the time of the intestate's death."

The rule is again stated in the same work at Section 20, as follows:

"One has a vested right in property to which he succeeds under the law of descent and distribution immediately on the death of the ancestor. It follows that an estate must be distributed according to the law as it exists at the time of the death of the ancestor."

It is the court's opinion that laws governing succession to property after death are clearly matters for state legislature. The vested right is property which the law protects and is an immediate vested right of present or future enjoyment. To be vested in its accurate legal sense a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent. A vested right is the power to do certain actions or possess certain things lawfully and is substantially a property right and may be created either by common law, by statute or by contract. A failure to exercise a vested right before the passage of a subsequent statute, which seeks to divest it, in no way affects or lessens that right.

Security Bank & Trust Co. of Miami, Okl v. Barnett, 36 P. 2d 874, 880, 169 Okl 298.

Quoting from City of Chicago v. Collin, 121 N. E. 751, 752, 304 Ill 270:

"While the general rule is that statutes are not to be given retrospective operation except where it is manifest that the legislature intended that they should have such operation, it is not competent for the legislature to give such operation to an act where it will affect existing or vested rights; a vested right being an immediate fixed right to present or future enjoyment."

Quoting also from Black on Interpretation of Laws, page 256:

"When the effect of giving to a statute a retrospective construction would be to make it destroy or impair vested rights, or impose new penalties, forfeitures, liabilities, or disabilities, such construction will be avoided, and the statute will be held to apply to future acts and cases only, provided that this can be done by any reasonable interpretation of the language used by the legislature."

The court must presume that the amount paid to the defendant, the widow of deceased, was for pay accumulated from the time he was missing until the time he was declared officially dead. The matter to be determined by this court is whether the sum due deceased at his death and collected by defendant herein was or was not a gratuity. If it be a gratuity and was paid to the widow under the act she would be declared a preferred payee, then this demurrer should be overruled. If it is a property right arising on a contract with the government, the amount due and payable to the deceased, at the time he was declared legally dead is a vested right and becomes a part of the estate of the deceased.

The court has found that the law of this case is expressed by the decision in the case of Campbell v. Oliphant, et al., heard at the September Term, 1947, Knoxville, Tenn. and cited in 185 Tenn. 415, and 206 S. W. 2nd 406.

It appears in that case the executor had collected the money from the general accounting officer of the United States Army and the father, Hayden Campbell, had brought suit claiming he was the next of kin entitled to pay and that the sum paid the executor, Oliphant, was a gratuity. Therein the chancellor held the funds to be the assets of the estate of Charles Campbell and should be administered by the executor,

and from an adverse decree the father has duly perfected his appeal. The appellant is the father of Charles Campbell, who lost his life on a flight over Austria during the recent war. The appellee, Oliphant, is the executor named in the last will and testament of Charles Campbell, made shortly before he became a member of the Air Corps. Charles was reported missing in action July 26, 1944. An official finding of death was made by the war department on July 27th, 1945. Later the date of his actual death was established as July 26th, 1944, the information as to such fact not having been received by the war department, apparently, until a short time before December 13, 1945, and during the time intervening between the date Charles was reported missing in action and the official date of his death there accrued to him his salary or compensation the sum involved. Shortly after the official date of death, which was a year after Charles was reported missing, apparently Oliphant probated the will, qualified as executor, and collected the sum of money due, less certain deductions, the correctness of which is not involved. The funds in that case were collected by virtue of what is known as the Missing Persons' Act, which is as follows:

"Any person in the active service who is officially determined to be absent in a status of missing, missing in action, interned in a neutral country, captured by an enemy, beleaguered or besieged will, during the time he is so missing, etc., be entitled to receive or to have credited to his account the same pay and allowances to which he was entitled at the beginning of such period of absence or to which he may become entitled thereafter, until it is established or determined that he is dead. During such period of absence, any allotment in effect at the beginning of absence, including allotments for the purchase of United States bonds, may be continued by the government. After the expiration of twelve months, a review of the case will be made, followed by a determination that the person is dead or that he is presumed to be still living. These provisions are administered by the branch of the armed service of which the person in question was a member."

50 U. S. C. A. Appendix, Secs. 1001-1017, being an Act of March 7, 1942, Chap. 166, 56 Stat. 143, as amended by Act of July 1, 1944, Chap. 371, 58 Stat. 679.
American Law of Veterans, Sect. 913, p. 722.

"At the end of the year, it not appearing to the contrary

'death shall be presumed to have occurred for the purposes of termination of crediting pay and allowances, and such date shall be the day following the day of expiration of an absence of twelve months'."

50 U. S. C. A. Appendix, sec. 1005.

The appellalnt, father, says that this fund was not earned, due or owing to Charles Campbell at his death and that Charles Campbell had no vested interest in it which could pass under the will, and that this was a contingent gratuity payable to the named heirs or kinsmen of the deceased in the event the missing soldier was not found alive during the year, and hence could not become a part of his estate which is subject to be willed by the decedent.

Further, it is said in this case, there is nothing in the Missing Persons Act to indicate that the Congress had any thought of tying it in with or to the Death Gratuity Act. This Act, the Missing Persons Act, is clearly for the use and benefit of the soldier. It is made to him presumptively as though he were alive. Under the act he is alive for at least twelve months unless the contrary appears. At the end of twelve months, nothing to the contrary appearing, he is presumed dead and his pay and allowances stopped. There is no gratuity. It is a contract with the soldier made by congressional enactment which becomes a part of every soldier's contract with the government. It, by this very act, becomes an agreement on the part of the government that such and such will be done under certain conditions. For this reason the fund created under this act as paid to the executor herein became a part of the deceased soldier's estate.

Considering some pertinent expressions in the Act the government regarded the sum paid as a debt from it to Charles Campbell. The obligation is absolute. Any person missing, while thus carried, shall be entitled to receive or to have credited to his account. "Entitlement" shall terminate on finding of death. Also "Provided, that such entitlement to pay and allowances shall not terminate upon expiration of term of service during absence and in case of death during absence shall not terminate earlier than the dates herein prescribed." 50 U. S. C. A. Appendix, Sec. 1002. And section 9 of the Act, 50 U. S. C. A. Appendix, Sec. 1009, reads, so far as pertinent as follows: "The head of the department concerned, or such subordinate as he may designate, shall have authority to make all determinations necessary in the determination of this Act, and for the purposes of this Act determinations so made shall be conclusive as to death or finding of death," etc.

"Payment or settlement of an account made pursuant to a report, determination, or finding of death shall not be recovered or reopened by reason of a subsequent report or determination which fixes a date of death except that an account shall be reopened and settled upon the basis of any date of death so fixed which is later than that used as a basis for prior settlement. Determinations are authorized to be made by the head of the department concerned, or by such subordinate as he may designate, of entitlement of any person, under provisions of this Act, to pay and allowances, including credits and charges in his account, and all such determinations shall be conclusive," etc.

This act resembles in its benevolent purpose pensions, compensation allowances, hospital and other privileges accorded to members of the army and navy or their legal incidents. Pensions, compensation allowances, and death gratuities are gratuities. They involve no agreement of the parties; and the grant of them creates no vested right. United States v. Cook, 257 U. S. 525, 527, 42 S. Ct. 200, 66 L. Ed. 350. On the other hand, this act is a part of the enlistment contract or agreement between Charles Campbell and the government. It therefore is property and creates a vested right. This contract is to be found in part of his enlistment contract, in part in the statutes enacted by the Congress and the regulations promulgated thereunder.

The syllabi in the above case reads as follows:

"Compensation to which missing soldier was entitled under Missing Persons Act for period from date he was reported missing in action until official date of death was due him as a contractual obligation of the government and not as a 'gratuity' and hence was payable to executor of his estate and became a part of estate."

"Pensions, compensation allowances, are 'gratuities' and involve no agreement of the parties and the grant of them creates no vested right."

The court affirmed the lower court in the case of Campbell v. Oliphant, and expressed the law in the syllabi quoted above.

Counsel for defendant has cited the case of Judge Reed v. John Reed, reported in 53 Maine Reports, 527, the syllabi of which reads:

"By virtue of the Public Laws of the United States, c. 9, Paragraph 6, of 1861, and c. 144 paragraphs 1 and e, of 1862, the father, (if resident of the United States) of a deceased

volunteer soldier is entitled to his arrears of pay and bounty. And the soldier has no right to dispose of either by will.

"Congress has a right to prescribe and determine what pay and bounty shall be given to a soldier, and to whom, in the case of his death, the terms of which had been established by Congress, and to which he assented by the act of his enlistment."

There is a difference in the case at bar and the case cited under Public Laws of United States of 1861. In the case at bar the decedent enlisted and earned his money and it was due the executor or administrator, had one been appointed and had demand been made at the time he was declared legally dead. He was declared legally dead January 21st, 1946, and the law was passed February 28th, 1946; the executor was appointed March 19th, 1946, and defendant demanded and received payment May 28th, 1946, after the executrix was appointed, and it appears before a demand was made. A demand on the accounting officer after the payment was made would be a futile thing.

The petition sets forth plaintiff seeks to recover from defendant money which the defendant has collected which really belonged to the plaintiff as executrix. The accounting officer had a right to pay either one of them, but does that give the one not entitled to the fund the right to retain for her own use the amount of money which, by the very Act itself is a part of the estate?

Following Holmes v. Adams, Supreme Judicial Court of Maine, Decision Dec. 27th, 1912,

"The statutes in force at the time of one's death govern the disposition of his estate."

This was reported in 85 Atl. 492.

The act of congress under consideration in the instant case possesses the characteristics of the familiar "facility of payment" clause found in many life insurance policies.

The cases agree that the purpose of such a clause is to protect the insurer and facilitate the manner of payment of proceeds by the insurer, not to determine the right to proceeds as between conflicting claims. The case of Smith v. Massie, Inc., 179 N. E. 20 and Lutostanski v. Lutostanski, Conn., 181 A. 533 are cases holding that where an insurer acting under the facility of payment clause makes payment to a relative, the relative becomes a trustee accountable to the estate of

the insured. It would seem that the same reasoning would apply to 10 USCA, page 68. The legislative history indicates the purpose of the act was merely to facilitate payment and protect the paying authorities, and not to determine the right to pay allowances as between adverse claimants. You will note that the statute provides "where no demand is presented by a duly appointed legal representative of the estate, the accounting officers may" and so forth. Certainly the statute in no way implies that allowances due a deceased veteran are not part of his estate.

Therefore, the court is of the opinion that the money paid by the accounting officer to defendant, Mary E. Scammon, the widow of George E. Scammon, deceased, was money due to the deceased soldier under his contractual rights with the government and was not a gratuity, and upon his death was part of his estate and should be a fund of the administrator or executor.

Accordinglly, the court will sustain plaintiff's demurrer to defendant's answer herein.

Counsel will draw their entires accordingly.