ANN GLEAVES PATTON

*v.*

JAMES ALBERT GLEAVES, SR.

(*Nashville,* December Term, 1959.)

Opinion filed April 6, 1960.

542

ROBERT C. BOYCE, JR., and THEODORE HUDSON, Nashville, for appellant.

RICHARD D. GLEAVES, FARRIS, EVANS & EVANS, and JAMES CLARENCE EVANS, Nashville, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

James A. Gleaves, Jr., was the son of James A. Gleaves, Sr., and Mrs. Ann Gleaves Patton. The father and mother were divorced long prior to the entry of James A. Gleaves, Jr., into the United States Marine Corps. While a Lieutenant in the Marine Corps he was

shot down in April, 1951. On March 17, 1954, he was officially declared dead. At the time the authorities declared him dead, he had due him as unpaid salary something over $12,000.

The father, James A. Gleaves, Sr., qualified as administrator of the estate of this son on April 26, 1954. The sum due from unpaid salary to this deceased soldier was paid to this father as administrator. The contest here is between the divorced parents as to who is entitled to this sum of money. The County Judge held that James A. Gleaves, Jr., died intestate and left surviving him this father and mother, but no widow or children. He further held that the divorce of these parents does not constitute a bar to the mother's right to succeed to a half of this estate as one of two parents of the deceased boy.

The court though held that in view of "Record of Emergency Data" memorandum filed as part of the record that the mother was not entitled to share in this money. It is from this decree that the mother has appealed. Briefs have been filed and we have made considerable independent investigation of the matter and now have the question for determination.

This "Record of Emergency Data" is on a printed form used by the Marine Corps to be filled out by its members. This form was filled out by the deceased soldier and sworn to by him on the 4th of October, 1950. The first part of the data is the name of the deceased soldier, his grade, etc. Number 5 of this form is the designation of the person to be notified in case of an emergency. This was the father. Number 6 of this form designates the alternate person to be notified in case of an emergency, and in this instance it was the mother.

544

Number 7 provides: "As a guide in administering legislation governing the well being and protection of my dependents in the event that I am unable to make provision therefor, it is my desire that", and then the father is named, giving his address and providing that this father shall receive each month one hundred (100%) per cent of the son's pay. It is on this designation that the County Judge determined that the mother was not to share in this estate.

■■ The theory of the appellee and apparently the County Judge was that this constituted a contract, or assignment, from the boy to his father, turning over this entire sum to the father to the exclusion of the mother. A determination of this kind though depends upon the intention of the parties. As we read this document it does not attempt in any way to dispose by will or contract of sums of money but is really, in effect, a document for the benefit of the Marine Corps in disposing of the personal property etc. of the soldier in case of an emergency. It clearly does not amount to a will. There is no particular showing or reason why one of these parents should be preferred over another. There is no consideration for such an assignment. The mere fact that the boy in his lifetime designated first the father and then the mother evinces, to our mind, not a desire to designate that this money should belong, from a legal standpoint, to the father over the mother. It is merely a designation as to whom the Marine Corps should pay this and there are other provisions in there as to whom they should send his property in case of an emergency.

■ Compensation of the kind, salary due a missing soldier for the period he is reported missing until the official date of his death, was due him as a contractual

obligation of the Government, and hence was payable to the father as administrator of the estate and became a part of his estate. *Campbell v. Oliphant*, 185 Tenn. 415, 206 S.W.2d 406.

The authorities cited by both parties herein are largely based upon whom the Government can or cannot pay money of the kind to. None of the authorities are in point at all as to the effect of "Record of Emergency Data" other than indicating what we have just said, that this "Record of Emergency Data" is merely a guide to the governmental department as to whom the money and things shall be paid or delivered.

Both sides apparently rely upon *Smith v. Prichard*, 22 Tenn.App. 321, 122 S.W.2d 829. This opinion though is not controlling, or necessarily in point, except to show the difference between a will and a deed, or a deed and a contract. Upon proper analysis we are convinced that the discussion therein is authority for what we have said above, that this "Record of Emergency Data" herein does not constitute a contract or an assignment of this salary to the father to the exclusion of the mother. This document had the effect more or less of being in the instant case like the ordinary "facility of payment" clause found in the life insurance policies. The purpose of such a clause is to protect the insurer and facilitate the manner of payment of proceeds by the insurer, not to determine the right to the proceeds as between conflicting claims. Such cases as *Smith v. Massie*, 93 Ind.App. 582, 179 N.E. 20; and *Lutostanski v. Lutostanski*, 120 Conn. 471, 181 A. 533, 534, are cases in point, holding where an insurer acting under the "facility of payment" clause makes payment to a relative, the relative becomes a trustee accountable to the estate of the insured. As we see

it that is all that this "Record of Emergency Data" form amounted to.

For the reasons above expressed, the case is reversed and remanded to the County Court where distribution will be made according to the statute, made and provided in such cases.