Salvatore F. MONACO et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America et al.,
Defendants-Appellees.

James H. CAMP et al.,
Plaintiffs-Appellants,

v.

James R. SCHLESINGER, Secretary of
Defense, et al., Defendants-Appellees.

Nos. 73–2743, 74–3141a.

United States Court of Appeals,
Ninth Circuit.

Sept. 17, 1975.

Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1114.

David E. Pesonen (argued), San Francisco, Cal., for plaintiffs-appellants.

James L. Browning, Jr., U. S. Atty. and Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for defendants-appellees.

F. L. Hetter (argued), San Diego, Cal., for plaintiffs-appellants.

Peter W. Bowie (argued), Asst. U. S. Atty., San Diego, Cal., for defendants-appellees.

## OPINION

Before CHAMBERS and CARTER, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

These are companion cases which were consolidated on appeal inasmuch as each presents an identical controlling question of law.

The Monaco case was commenced in the Northern District of California by several civil service employees of the Naval Air Rework Facility at the Naval Air Station, Alameda County, California, as a class action on behalf of themselves and other employees who were in a retired or retainer status from career service in the Armed Forces of the United States. The named defendants are the United States, the Secretary of Defense and a number of other federal military and civil service officials. The action came on for hearing before the District Court on plaintiffs' motion for a

---

* The Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

preliminary injunction. On July 3, 1973, the Court denied the motion. This appeal is from the order denying the preliminary injunction and the jurisdiction of this Court is predicated on 28 U.S.C. § 1292(a)(1).

Similarly, James H. Camp and others filed a complaint in the Southern District of California naming as defendants the Secretary of Defense and several federal officials of the civil service and navy departments. The class of plaintiffs consisted of civil service employees of the Naval Air Rework Facility, North Island, San Diego, California, who were retired military servicemen. The case came before the District Court on plaintiffs' prayer for a temporary restraining order and, after hearing, Judge Edward J. Schwartz entered an order denying the relief sought and dismissing the complaint for failure to state a claim. An appeal was taken which was remanded by this Court of Appeals for reasons not pertinent to this Opinion. Thereafter, plaintiffs filed an amended complaint. The matter came on for hearing on defendants' motion to dismiss before Judge Gordon Thompson, Jr., and he, on November 10, 1972, granted the motion to dismiss for failure to state a claim. This appeal followed, the jurisdiction of this Court being founded on 28 U.S.C. § 1291.

In both the Monaco and Camp cases, the plaintiffs, retired military personnel, were threatened with loss of their civil service jobs as a consequence of a substantial reduction in force at the respective Naval Air Rework Facilities. All plaintiffs were receiving pensions earned by virtue of their military service from which they had retired. The plaintiffs assert vested rights under the Veterans' Preference Act of 1944, originally codified at 5 U.S.C. § 861 et seq., which was in effect during the periods of their active military service. The plaintiffs allege that the Dual Compensation Act of 1964, 5 U.S.C. §§ 3501, 3502 and 3503, is unconstitutional and injunctive relief was sought against the enforcement of the provisions of the Dual Compensation Act of 1964 insofar as they affect the priority rights of plaintiffs to retain their civil service employment.

The Veterans' Preference Act of 1944, in addition to establishing a general preference for honorably discharged veterans "[I]n certification for appointment, in appointment . . . and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government" (58 Stat. 387, ch. 287, sec. 2), contained the following specific provision (58 Stat. 387, ch. 287, sec. 12):

"In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: Provided, That the length of time spent in active service in the armed forces of the United States of each such employee shall be credited in computing length of total service: Provided further, That preference employees whose efficiency ratings are 'good' or better shall be retained in preference to all other competing employees and that preference employees whose efficiency ratings are below 'good' shall be retained in preference to competing nonpreference employees who have equal or lower efficiency ratings * * * ."

The Dual Compensation Act of 1964 (P.L. 88–448, 78 Stat. 484) provided, in pertinent part:

"Sec. 202. Section 12 of the Veterans' Preference Act of 1944, as amended (5 U.S.C. 861), is amended—

"(1) by inserting '(a)' immediately following 'Sec. 12.';

"(2) by inserting ', subject to subsection (c) of this section,' immediately after the word 'That' in the first proviso thereof;

"(3) by inserting '(subject to subsection (b) of this section)' immediately after 'military preference'; and

"(4) by adding at the end thereof the following new subsections: '(b)

Notwithstanding any other provision of this Act, an employee who is a retired member of any of the uniformed services included under section 2 of this Act shall be considered a preference employee for the purposes of subsection (a) of this section only if—

" '(1) his retirement was based on disability (A) resulting from injury or disease received in line of duty as a direct result of armed conflict or (B) caused by an instrumentality of war and incurred in the line of duty during a period of war (as defined in sections 101 and 301 of title 38, United States Code); or

" '(2) his service does not include twenty or more years of full-time active service (regardless of when performed but not including periods of active duty for training); or

" '(3) immediately prior to the effective date of this subsection, he was employed in a civilian office to which this Act applies and, on and after such date, he continues to be employed in any such office without a break in service of more than thirty days.' "

It is primarily the foregoing section of the Dual Compensation Act which is attacked as unconstitutional by these plaintiffs. The impact of the amendment was to eliminate the preference rights of these plaintiffs to retention in civil service employment because the military service of these plaintiffs did include twenty or more years of full-time active service and because these plaintiffs were not employed in a civilian office to which the Act applies immediately prior to the effective date of the subsection, that is, August 19, 1964.

■ In both cases, a motion was made to empanel a statutory three-judge district court under 28 U.S.C. § 2282. In each case, the motion was denied upon the ground that the constitutional issue is insubstantial. *Ex parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). We agree. We, nevertheless, recognize the test for insubstantiality explicated by the Supreme Court in *Goosby v. Os-* ser, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973):

"Title 28 U.S.C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' *Bailey v. Patterson,* 369 U.S. [31], at 33 [82 S.Ct. [549], at 551 [7 L.Ed.2d 512], 'wholly insubstantial,' *ibid.*; 'obviously frivolous,' *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288 [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); and 'obviously without merit,' *Ex parte Poresky,* 290 U.S. 30, 32 [54 S.Ct. 3, 4–5, 78 L.Ed. 152] (1933). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' *Ex parte Poresky, supra,* at 32 [454 S.Ct. [3], at 4], quoting from *Hannis Distilling Co. v. Baltimore, supra* [216 U.S.], at 288 [30 S.Ct. [326], at 327; see also *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105–106 [53 S.Ct. 549, 550, 77 L.Ed. 1062] (1933); *McGilvra v. Ross,* 215 U.S. 70, 80 [30 S.Ct. 27, 31, 54 L.Ed. 95] (1909)."

See *Vun Cannon v. Breed* (9th Cir., June 19, 1975).

We observe the facial incongruity of declaring a contention to be "essentially fictitious," "wholly insubstantial" and "obviously without merit" in the light of the arguments sincerely made by Appel-

lants in lengthy briefs. It would be equally incongruous for this Court to engage in a lengthy discussion of the contentions in the light of a conclusion that the constitutional issues are insubstantial. We shall, therefore, limit ourselves to a short, succinct statement of the reasons for this conclusion.

■ The hub of Appellants' argument is that they, by enlisting in the military service between 1944 and 1964, acquired a vested, unrepealable right by virtue of the Veterans' Preference Act of 1944 to preference for employment in the federal civil service and preference to retention of employment in the federal civil service. This is simply and obviously not so. More than ninety years ago, the Supreme Court held: "No pensioner has a vested legal right to his pension. Pensions are the bounties of the government, which congress has the right to give, withhold, distribute, or recall, at its discretion." *United States v. Teller,* 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352 (1882). The principle has never been overruled or modified. It was reaffirmed in *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), where Justice Brandeis, for the High Court, wrote:

> "War risk insurance, while resembling in benevolent purpose pensions, compensation allowances, hospital and other privileges accorded to former members of the Army and Navy or their dependents, differs from them fundamentally in legal incidents. Pensions, compensation allowances, and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress. *United States v. Teller,* 107 U.S. 64, 68 [2 S.Ct. 39, 27 L.Ed. 352]; *Frisbie v. United States,* 157 U.S. 160, 166 [15 S.Ct. 586, 39 L.Ed. 657]; *United States v. Cook,* 257 U.S. 523, 527 [42 S.Ct.

200, 66 L.Ed. 350]. On the other hand war risk policies, being contracts, are property and create vested rights. The terms of these contracts are to be found in part in the policy, in part in the statutes under which they are issued and the regulations promulgated thereunder."

See: Annotation, 52 A.L.R.2d 437.

A pension is the most direct and calculable of a government's bounties to exservicemen. *A fortiori,* with respect to a fringe benefit like a preferential right to retention in federal civil service employment. The *Lynch* distinction between contract rights and gratuities remains viable and was recently relied upon in *Carina v. United States,* E.D.Va., January 17, 1975 (unreported), in which the Court held that an agreement to extend enlistment entered into by a serviceman carried with it the Variable Reenlistment Bonus provided by 37 U.S.C. § 308 which could not be thereafter reduced by Congress' amendment of section 308 to substitute the Selective Reenlistment Bonus. The serviceman's rights were fixed by contract. That is not so in the present case. Cf. *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).[1]

■ Appellants also argue that the impact of the Dual Compensation Act of 1964 is unconstitutional because it arbitrarily discriminates against servicemen retired after twenty years' service and that it violates constitutional prohibitions against ex post facto laws and bills of attainder. *Flemming v. Nestor, supra,* is a complete and controlling answer to each of these contentions. "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in ra-

---

1. *Flemming v. Nestor,* 363 U.S. 604, 80 S.Ct. 1367 (1960), attracted four dissenters. When the Supreme Court splits five to four, it is, of course, arguable that the constitutional issues cannot be termed frivolous or wholly insub-

stantial. A review of the dissenting opinions will show, however, that the dispute was not with the enunciation of principles by the majority, but concerned the application of those principles to the facts of the particular case.

tional justification." *Flemming v. Nestor, supra,* at p. 611, 80 S.Ct. at p. 1373; *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The change made by Congress with respect to veterans' employment preference rights when it enacted the Dual Compensation Act of 1964 was deliberate and for sustainable reasons. See: 1964 U.S.Code Congressional & Administrative News, pp. 2834–2853. On the issues of ex post facto and bill of attainder, *Nestor,* in the context of a statute which had revoked supplicant's social security benefits, had this to say:

> "The remaining, and most insistently pressed, constitutional objections rest upon Art. I, § 9, cl. 3, and Art. III, § 2, cl. 3, of the Constitution, and the Sixth Amendment. It is said that the termination of appellee's benefits amounts to punishing him without a judicial trial, see *Wong Wing v. United States,* 163 U.S. 228 [16 S.Ct. 977, 41 L.Ed. 140]; that the termination of benefits constitutes the imposition of punishment by legislative act, rendering § 202(n) a bill of attainder, see *United States v. Lovett,* 328 U.S. 303 [66 S.Ct. 1073, 90 L.Ed. 1252]; *Cummings v. Missouri* [71 U.S. 277], 4 Wall. 277 [18 L.Ed. 356]; and that the punishment exacted is imposed for past conduct not unlawful when engaged in, thereby violating the constitutional prohibition on ex post facto laws, see *Ex parte Garland* [71 U.S. 333], 4 Wall. 333 [18 L.Ed. 366]. Essential to the success of each of these contentions is the validity of characterizing as 'punishment' in the constitutional sense the termination of benefits under § 202(n)."

The legislative history (1964 U.S.Code Congressional & Administrative News, p. 2834, et seq.) plainly shows that Congress was motivated by an intention to straighten out what it deemed to be an inequity flowing from the advantage bestowed upon career servicemen who, after twenty or more years, retired from service with retirement pay and then entered a new federal civil service career with an automatic seniority based on their years of military service which virtually locked them into their new jobs, while career civil service employees, including non-retired veterans, were vulnerable to termination or reduction in grade at the time of any reduction in force. This was clearly a matter for legislative, not judicial, judgment and was not punitive.

 In summary, then, these cases involve an attack on the constitutionality of amendments to a law (The Veterans' Preference Act of 1944) which was enacted to regulate the civil service system with respect to its hiring, retention and termination of federal civil service employees and was not enacted as conditions (incorporated by operation of law) of the enlistment contracts governing the employment of those entering military service. The seniority rights of retired servicemen vested only after they entered the federal civil service and passed the probationary period. These rights were carefully recognized and preserved by the Congress (78 Stat. 486, P.L. 88–488, sec. 202(b)(3), *supra*). Until then, whatever anticipations a serviceman entertained between 1944 and 1964 with respect to preferential advantage in the federal civil service were no more than some sort of floating expectancy entirely dependent upon the Government's bounty. A claim of unconstitutional deprivation cannot be built upon this foundation. The law is clear.

In the Monaco case, the District Court also denied injunctive relief for lack of equity, having found adequate administrative and legal remedies. While the argument is persuasive, we do not base our affirmance upon this ground.

The orders of the two district courts are affirmed.